IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANGELA FARRELL,

          Plaintiff,                          No. 11 CV 00120
                                                 **ELECTRONICALLY**
       v.                                      **FILED**

ABBOTT LABORATORIES, INC.

          Defendant.

## MEMORANDUM OPINION RE:  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 45)

**I.**      **INTRODUCTION**

This is an employment discrimination action.  *Pro se* Plaintiff Angela Farrell ("Farrell") alleges that Defendant Abbott Laboratories, Inc. ("Abbott") discriminated against her on the basis of her gender when it terminated her from her employment in violation of  Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. § 951 *et seq.*, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*  Currently pending before this Court is the Motion of Defendant, Abbott Laboratories, Inc., for Summary Judgment.  Doc. No. 45.  The Court has reviewed Defendant's Motion for Summary Judgment, the brief in support, the parties' concise statements of fact, Plaintiff's response in opposition to Defendant's Motion for Summary Judgment, and Defendant's reply brief in support of the Motion for Summary Judgment.  Doc. Nos. 45, 46, 47, & 53.  For the reasons set forth below, the Court will grant Defendant's Motion for Summary Judgment in its' entirety.

## II.    FACTUAL BACKGROUND

The following facts are material and undisputed unless otherwise indicated herein.[1]

### A.  The Parties

Defendant Abbott Laboratories, Inc., is a global health care company, headquartered in Abbott Park, Illinois.  Doc. No. 1 ¶ 6.  Abbott researches, develops, and distributes new medicines and technologies throughout the United States.  Doc.  Nos. 1 ¶ 5, 48, Exhibit 1, ¶ 3. Plaintiff Angela Farrell is a former, female at-will employee who began working for Abbott as a Long-Term Care Representative on November 10, 1999.  Doc. No. 47 at ¶ 2.  In May of 2007, Plaintiff was transferred to the Renal Care segment of Abbott's Pharmaceutical Products Division ("PPD") and became a Renal Account Specialist.  *Id.* at ¶ 3.  As a Renal Account Specialist, Plaintiff's responsibilities included visiting local physicians, hospitals, and clinics to promote Abbott's pharmaceutical products and to expand Abbott's market share throughout Western Pennsylvania.[2]  *Id.* at ¶¶ 4-5.

In order to ensure that its sales representatives adequately promoted its products on an on-going basis, Abbott required each sales representative to undergo an annual review.  Doc. No. 47 at ¶ 9.  In April of 2009, Plaintiff received her annual review for 2008.  *Id.*  Plaintiff's District Manager, Vince Pizzitola ("Pizzitola"), as well as her Regional Manager, Steve Gillespie ("Gillespie"), oversaw her review.[3]  *Id.*  Plaintiff received Abbott's highest overall rating

---

[1] The parties were required to set forth a Joint Concise Statement of Material facts.  However, the factual statements were separately filed and were not "Jointly" filed.  The Court has attempted to fairly set forth the factual background, viewing the facts in the light most favorable to Plaintiff, who is now appearing *pro se.*

[2] Abbott organized its' pharmaceutical sales representatives into districts.  Plaintiff was responsible for the Western Pennsylvania District, which included Pittsburgh, Pennsylvania and several outlying areas.  Doc. No. 47 at ¶ 5.

[3] It should be noted that Plaintiff reported to District Manager Dave Houston from May of 2007 until January of 2009.  However, manager Vince Pizzitola oversaw her annual review because he was the then acting District Manager.  Doc. No. 47 at ¶ 6.

possible during this review for her work performance in 2008,[4] in which she dramatically

increased Abbott's market share of Zemplar IV in her district.[5]  *Id.* at ¶ 9-10.  Despite Plaintiff's

excellent review for 2008, Abbott terminated Plaintiff's employment on October 16, 2009.  *Id.* at

¶ 52.

### B.      Facts Surrounding Plaintiff's Termination

The parties dispute the reason for Plaintiff's termination in October of 2009.

### 1.      According to Abbott:

Abbott contends that Plaintiff's termination resulted from a series of violations of both

Abbott's Code of Business Ethics and Compliance (the "Code") and the Pharmaceutical Products

Division Sampling Policy Manual ("Sampling Policy Manual") that occurred from April of 2009

until October of 2009.  Doc. No. 47 at ¶¶ 12, 17.

The Code is a collection of ethical rules and guidelines that govern an Abbott employee's

conduct.  Doc. No. 47 at ¶ 12.  Abbott trained all of its employees on the Code annually, and

required all of its employees to adhere to the guidelines therein.  *Id.* at ¶¶ 13-14.  Abbott also

required Plaintiff to certify that she read, understood, and would comply with the guidelines and

policies found in the Code.  *Id.* at ¶¶ 14-15.  Similarly, Abbott implemented the Sampling Policy

Manual to ensure that its employees would comply with the Prescription Drug Marketing Act of

1987 ("PMDA"), 21 U.S.C. § 331, *et seq.*  *Id.* at ¶ 17.  The Sampling Policy Manual requires that

all Abbott employees distributing pharmaceutical drug samples physically witness the receiving

physician sign for the samples.  *Id.* at ¶ 18.

---

[4] Plaintiff also received multiple awards during her tenure with Abbott, including "All-Star Awards" in 2001, 2002, 2005, and 2008 as well as an "MVP Award" and "Rookie of the Year."  Doc. No. 53 at ¶ 3.
[5] Zemplar IV is a pharmaceutical product used to treat Hyperparathyroidism caused by Chronic Kidney Failure.

In April of 2009, Pizzitola received a customer complaint regarding Plaintiff's conduct. The customer informed Pizzitola that Plaintiff had raised her voice and conducted herself in an unprofessional manner during a phone conversation.[6]  Doc. No. 47 at ¶ 20.  After speaking to both Pizzitola and Gillespie about the incident, Plaintiff received a written warning for her conduct.  *Id.*  at ¶¶ 22-25.  The written warning outlined several policies in the Code, which Farrell violated, and informed her that any additional violations of company policy could result in disciplinary action up to and including termination.  *Id.* at ¶ 25.

In July of 2009, Abbott conducted a random signature audit.[7]  During the audit, Abbott discovered that Plaintiff failed to witness a doctor sign for pharmaceutical samples, which was required by the Sampling Policy Manual.  Doc. No. 47 at ¶ 27.  In August of 2009, Plaintiff received a second written warning regarding this violation, which informed Farrell that any further incidents might lead to her termination or other disciplinary action.  *Id.* at ¶¶ 28-29.

In October of 2009, Fresenius Medical Care ("FMC")[8] asked Pizzitola to attend one of FMC's manager's meetings.  Doc. No. 47 at ¶ 31.  At the manager's meeting on October 2, 2009, FMC representatives Angie Andring[9] ("Andring") and Pam Wittkopp[10] ("Wittkopp") asked Pizzitola to prevent Plaintiff from returning to FMC facilities.  *Id.* at ¶ 36.  FMC's request resulted from several complaints about Plaintiff's conduct at FMC facilities.  *Id.* at ¶ 32.

---

[6] The alleged dispute between Farrell and the customer concerned a scheduling disagreement.  Abbott contends that Farrell told the customer that she was not done with the phone call after the customer informed her that the customer was ending the call.  Doc. No. 47 at ¶ 20.  Farrell contends that the issue was not resolved by phone, but rather via email.  Doc. No. 53 at ¶ 19.

[7] Abbott regularly conducts random signature audits on sales representatives to ensure that the sales representatives physically witness a physician sign for any drug samples he or she may receive.  The purpose of this policy is to ensure that sales representatives comply with the Sampling Policy Manual and the PDMA.  Doc. No. 47 at ¶ 26.

[8] FMC is a large Abbott client, with over 1500 clinics nationwide working with Abbott Renal Care.  Thirteen of these clinics existed in Plaintiff's district, representing approximately one-third of her total customers.  Doc. No. 47 at ¶ 30.

[9] Andring is FMC's Regional Quality Manager.

[10] Wittkopp is FMC's Director of Operations.

Specifically, the FMC clinic manager at the Latrobe, Pennsylvania location stated that Plaintiff regularly made unannounced visits to the clinic, which led to the medical director's refusal to meet with her.  In addition, the clinic manager complained that Farrell interfered with clinic staff during an emergency when she followed the clinic manager down the hall while the manager attempted to evacuate patients.  *Id.* at ¶ 33.  Another FMC clinic manager complained that Farrell had gone through the manager's desk without the manager's consent to retrieve and read a competitor's product brochure.  *Id.* at ¶ 35.

Furthermore, an FMC nurse complained that Plaintiff passed out coupons for Abbott pharmaceuticals ("ZPCP Cards") to FMC employees, which violated FMC's rule that only physicians distribute ZPCP Cards in FMC clinics.  Doc. No. 47 at ¶ 34.

As a result of FMC's complaints, Pizzitola instructed Farrell not to return to any FMC clinics managed by Wittkopp, that Abbott would be investigating the FMC complaints, and that Farrell should not discuss the on-going investigation with anyone.  Doc. No. 47 at ¶ 39.  Additionally, Pizzitola contacted Kelly McGee ("McGee"), Abbott's Employee Relations representative, to report FMC's complaints about Farrell.  *Id.* at ¶ 38.  Despite Pizzitola's instructions, Farrell returned to an FMC facilities on October 6, 2009, and questioned FMC staff about why she could not return to the facility.  *Id.* at ¶¶ 39-41.  After Pizzitola and McGee spoke to the FMC employee Farrell allegedly confronted, Abbott suspended Farrell on October 7, 2009 for interfering with Abbott's investigation into FMC's complaints about her behavior.  *Id.* at ¶ 42.  After interviewing Farrell on October 12, 2009 about the FMC complaints, McGee recommended that Abbott terminate Farrell's employment.  On October 16, 2009, Pizzitola and Gillepsie spoke with Farrell and terminated her employment for allegedly interfering with the

Abbott investigation, insubordination, and unprofessional behavior towards customers.  *Id.* at ¶ 52.

### 2.        According to Farrell:

Farrell disputes Abbott's allegations regarding her unprofessional conduct and contends Abbott's allegations are false and that her termination was the result of sex discrimination and in violation of the Employee Retirement Income Security Act ("ERISA").  Doc. No. 53. Specifically, Farrell contends that the April 2009 customer complaint against her is false.  She contends that the alleged phone call between her and the customer never took place, and that she only communicated with the customer via email.  Doc. No. 53.  Moreover, Farrell argues that she never conducted herself in an unprofessional manner with the customer and never raised her voice to the customer.  Doc. No. 53.  Rather, Farrell alleges that the customer's complaint was fabricated "to make [her] look bad."  Doc. No. 53 at ¶ 19.

Additionally, Farrell also challenges Abbott's contention that she violated the Sampling Policy Manual.  Although Farrell seemingly admits that she failed to witness the physician sign for pharmaceutical samples, she contends that she never falsified the physician's signature.  In addition, Farrell alleges that Abbott did not terminate her position because of the Sampling Policy Manual violation.  Doc. No. 53 at ¶ 20.  Farrell also challenges FMC's allegations, and claims that Abbott failed to provide her with a list of FMC clinics that she was prohibited from visiting.  Although Plaintiff admits visiting the FMC clinic on October 6, 2009, she contends that she was unaware that she was barred from that specific clinic, and contends that she never confronted any FMC employee about any FMC complaints with her conduct.[11]  Doc. No. 53 at ¶ 23.

---

[11] In addition to her contentions that she was terminated for gender discrimination, Farrell refers to several incidents in her Response to Defendant's Motion for Summary Judgment (doc. no. 53) and her deposition testimony (doc. no.

In addition, Plaintiff contends her termination was motivated by Abbott's desire to avoid paying her full retirement benefits under Abbott's employee benefit plan.  Doc. No. 1 at ¶ 41; Doc. No. 53 at ¶ 36.  Under Abbott's employee benefit plan, an employee needed to be employed for ten (10) years with Abbott and to reach the age of fifty (50) in order to receive early retirement benefits, or attain ten years of service and reach the age of sixty-five (65) to obtain full retirement benefits.  Doc. No. 47 at ¶ 55.  Plaintiff was terminated approximately three (3) weeks shy of ten (10) years of employment with Abbott, and had accrued 9.94 years of benefit service with the company.  *Id.* at ¶ 57.  Although Abbott terminated Plaintiff before she acquired ten years of service, Abbott credited Plaintiff with 10 years of vesting service.  *Id.* Thus, under Abbott's employee benefit plan, Farrell will be eligible to receive full retirement benefits when she reaches the qualifying age.[12]  *Id.*

## C.      Procedural Posture

As a result of her termination, Plaintiff filed a charge of gender discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 4, 2010.  Doc. No. 47 at ¶ 60.  On October 29, 2010, Plaintiff received a Dismissal of her EEOC charge and a Notice of Suit Rights letter.  *Id.* at ¶ 61.  Plaintiff commenced the present suit on January 3, 2011, alleging two separate causes of action against Defendant.  Specifically, Plaintiff alleges at Count I, sex discrimination in violation of both Title VII of the Civil Rights Act of 1964, as amended, 42

---

49) contain allegations that she was discriminated against by her managers and other employees at multiple times prior to her transfer to Abbott's Renal Division in May of 2007.  However, as Defendant correctly notes, a Title VII claimant must file a charge with the EEOC either 180 or 300 days "after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1); *see also*, *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).  Moreover, Plaintiff's complaint (which was filed while she had retained private counsel) only alleges a Title VII and PHRA violation in regards to her termination.  (Doc. No. 1 at ¶¶ 31-34).  Thus, Plaintiff's allegations of gender discrimination that occurred prior to her transfer to Abbott's Renal Division in May of 2007 will not be considered for the purposes of Plaintiff's Title VII allegations as these allegations are time barred.

[12] The monetary difference between 9.94 years of service and 10 years of service under Abbott's employee benefit plan is negligible.  Assuming Plaintiff will collect her full retirement benefits at age 65, she will receive approximately $6.78 more per month than she would have received had Abbott not credited her with 10 years of vesting service.  Doc. No. 47 at ¶ 58.

U.S.C. § 2000(e) *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. §

951 *et seq.* At Count II, Plaintiff alleges intentional interference with Plaintiff's employee

benefit plan in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

§ 1001 *et seq.* Doc. No. 1.

### III.    STANDARD OF REVIEW

Summary judgment should be granted if, drawing all inferences in favor of the non-

moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A fact is "material" if proof of its

existence or non-existence might affect the outcome of the suit under applicable law. *Anderson*

*v. Liberty Lobby Inc.*, 477 U.S. 242, 248, (1986). "Facts that could alter the outcome are

material facts." *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir.1994). In deciding

whether there is a disputed issue of material fact, the court must grant all reasonable inferences

from the evidence to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986); *Penn. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995).

The threshold inquiry is whether there are "any genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." *Anderson*, 477 U.S. at 250.

Once the moving party has properly supported its showing that there is no triable issue of

fact and demonstrated an entitlement to judgment as a matter of law, the non-moving party "must

do more than simply show that there is some metaphysical doubt as to material facts."

*Matsushita*, 475 U.S. at 586. The non-moving party must "go beyond the pleadings and by [its]

own affidavits, or by the depositions, answers to interrogatories, and admissions on file,'

designate 'specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one sided that the movant must prevail as a matter of law.  It is on this standard that the Court has reviewed the Defendant's Motion for Summary Judgment and the Responses thereto.  Doc. Nos.  46, 53, 56.

## IV.    DISCUSSION

### A.    COUNT I- SEX DISCRIMINATION IN VIOLATION OF TITLE VII AND THE PHRA

Plaintiff alleges that Defendant wrongfully terminated her in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. § 951 *et seq*.[13]  The *McDonnell Douglas* burden shifting analysis applies to Plaintiff's claims of gender discrimination under both Title VII and the PHRA.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under the *McDonnell Douglas* analysis, Plaintiff bears the initial burden of establishing a prima facie case of employment discrimination.  *Sarullo v. U.S. Postal Service*, 252 F.3d 789, 797 (3d Cir. 2003) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).  The existence of a prima facie case of employment discrimination is a question of law to be decided by the Court. *Sarullo*, 252 F.3d at 797.

In order to establish a prima facie case, Plaintiff must demonstrate that: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse

---

[13] Gender discrimination claims under both Title VII and the PHRA are analyzed under the same standard.  *Weston v. Pennsylvania,* 251 F.3d 420, 425 n. 3 (3d Cir. 2001).

employment action; and, (4) the adverse employment action occurred "under circumstances that raise an inference of discriminatory action." *Id.* at 798 (citing *McDonnell Douglas*, 411 U.S. at 802).

Once the plaintiff has established a prima facie case of employment discrimination then the "burden [] . . . shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's [termination]." *McDonnell Douglas*, 411 U.S. at 802. If the employer provides a legitimate, nondiscriminatory reason for the employee's termination, the employee must provide "sufficient evidence to raise a genuine issue of fact as to whether the employer's proffered reasons were not its true reasons for the challenged employment action." *Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061, 1066 (3d Cir. 1996) (en banc); see also, *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (noting that a plaintiff can survive summary judgment by articulating "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.")

Abbott contends that Farrell has failed to establish a prima facie case for gender discrimination because she has failed to demonstrate that she was qualified for the position and that her termination occurred under circumstances that raise an inference of discriminatory action.[14]  Doc. No. 46 at ¶¶ 9-10. In addition, Abbott argues that if Plaintiff has demonstrated a prima facie case of gender discrimination, she has failed to prove that Abbott's legitimate, nondiscriminatory reasons for terminating her employment were pretextual. Doc. No. 46 at ¶ 11.

---

[14] Defendant concedes that Plaintiff is a member of the protected class and that she was subject to adverse employment action, thus these prongs (one and three) of the *McDonnell Douglas* prima facie test will not be addressed.

### 1.      Plaintiff is a Qualified Employee Within the Meaning of Title VII

In order to satisfy the second prong of a prima facie case of gender discrimination, a plaintiff is required to demonstrate that he or she is qualified for the position. *Sarullo*, 252 F.3d at 797. The United States Court of Appeals for the Third Circuit requires that this Court determine Plaintiff's qualifications based upon an objective standard. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir. 1990). Accordingly, "the question of whether an employee possesses a subjective quality, such as leadership or management skill, is better left to the later stage of the *McDonnell Douglas* analysis." *Id.*

Here, Defendant contends that because it terminated Farrell for insubordination, unprofessional conduct, and interfering with an internal investigation, that she is not qualified for the position. Specifically, Defendant relies on two Pennsylvania District Court cases to argue that because Plaintiff failed to demonstrate that she was satisfactorily performing her job that she was unqualified for the position. *See Lamison v. Bottling Group, LLC,* Case No. 07-306, 2009 WL 2707443 at *6 (W.D. Pa. Aug. 26, 2009); *Stove v. Phila. Sch. Dist.,* 58 F. Supp. 2d 598, 604 (E.D. Pa. 1999). In *Lamison*, the United States District Court for the Western District of Pennsylvania held that a plaintiff failed to establish her prima facie case because she failed to prove that she performed her work in a satisfactory manner. Case No. 07-306, 2009 WL 2707443 at *6. There, plaintiff refused to check a "no defects" box on a company form after she had inspected a shipment of VCR's. *Id.* Because completing the form was a requirement of the job, and the plaintiff failed to do so, the court held that her failure to perform her job duties in a satisfactory manner precluded plaintiff from establishing that she was a qualified employee. Similarly, in *Stove*, the United States District Court for the Eastern District of Pennsylvania held that plaintiff failed to establish that she was a qualified employee because the condition of her

work station failed to meet company standards, she had difficulty arriving to work on time, and left work without having fulfilled her responsibilities.  58 F. Supp. 2d.  at 604.

However, the United States Court of Appeals for the Third Circuit has determined that "[i]nsubordination, under the *McDonnell Douglas* method of proof, plainly is not something the plaintiff must *disprove* to succeed at the first level of proof, but rather it is more logically a defense that is raised at the second level to meet the plaintiff's prima facie case of discrimination."  *Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989) (citing *Pollack v. American Tele. & Tele.  Long Lines,* 794 F.2d 860, 863-64 (3d Cir. 1986) (noting that insubordination, poor performance, and misconduct asserted as legitimate reasons for employee discharge) (emphasis in original)).  In *Jalil*, the Court of Appeals for the Third Circuit held that plaintiff established he was a qualified employee because he was employed by the company for eight years and promoted during that time.  873 F.2d at 707.  The Court of Appeals noted, "his satisfactory performance of duties over a long period of time leading to a promotion clearly established his qualifications for the job."  *Id.*

Based upon the interpretation of a qualified employee under Title VII by the United States Court of Appeals for the Third Circuit in *Jalil* and *Pollack*, Farrell has demonstrated that she was qualified at the time of her termination.  The factual background evidences that Abbott employed Plaintiff for a period of nearly ten years, during which time she received multiple awards for her exemplary performance.  Doc. No. 53 at ¶ 3.  Moreover, Plaintiff received a rating of "Exceeded Expectations" on her previous annual review; the highest performance rating under Abbott's rating system.  *Id.*  Therefore, because Farrell demonstrated that she performed "satisfactory over a long period of time," she has adequately shown that she is a qualified

employee for the purposes of establishing a prima facie case for gender discrimination. *See Jalil*, 873 F.2d at 707.

### 2.      Plaintiff Has Failed to Demonstrate an Inference of Discriminatory Action Leading to Her Termination

In order to satisfy the fourth prong of the prima facie case, Farrell must demonstrate that she was terminated under circumstances that support an inference of discrimination. *Sarullo*, 352 F.3d at 797.  Although the United States Court of Appeals for the Third Circuit "has not been overly demanding in the proof required for a prima face case," a plaintiff must make at least some showing that she was treated differently from similarly situated individuals of the opposite sex. *Whack v. Peabody & Wind Engineering Co.*, 595 F.2d 190, 193 n. 11 (3d Cir. 1979) (internal citations omitted).  Thus, in order to create an inference of discrimination, a plaintiff must show by "sufficient evidence that non-members of the protected class were treated more favorably." *Atkinson v. Lafayette College*, Case No. 01-CV-2141, 2003 U.S. Dist. LEXIS 13951 at *17 (E.D. Pa. July 24, 2003) (citing *Goosby v. Johnson & Johnson Med., Inc.,* 228 F.3d 313, 318-19 (3d Cir. 2000)).

Here, Plaintiff has failed to present any evidence that Abbott treated a member of the opposite sex more favorably.  Rather, Plaintiff contends that the allegations against her, which led to her termination, are false and that the majority of men in her district received larger bonus payouts and larger car allowances than she did during her employment with Abbott.  Doc. No. 53 at ¶ 33.  However, Plaintiff failed to present any evidence that any male employee of Abbott who was similarly situated, received greater benefits, or that Abbott failed to terminate a similarly situated male employee.  Thus, this Court concludes that Farrell has failed to establish that she was treated differently than a similarly situated employee outside the protected.  Therefore, no

genuine issue of material fact exists that would allow a reasonable finder of fact to determine that

Abbott terminated Plaintiff's position due to her gender.  Accordingly, this Court will enter

summary judgment in favor of Defendant on Plaintiff's claims under Title VII and the PHRA.

### 3. Plaintiff Has Failed to Rebut Defendant's Legitimate Non-Discriminatory Reason for Her Termination

The Court also finds that Farrell has failed to present sufficient evidence to rebut

Abbott's proffered legitimate non-discriminatory reason.  Abbott has articulated a legitimate

non-discriminatory reason for Plaintiff's termination.  Namely, that Plaintiff was terminated

because of multiple customer complaints and several violations of both Abbott's Code of

Business Ethics and Compliance and Abbott's Sampling Policy Manual.  In April of 2009, it is

undisputed that Farrell's supervisors received a complaint from a customer that Farrell had raised

her voice during a phone conversation, and informed the customer "she was not done" with the

phone conversation.  Doc. No. 47 at ¶ 20.  Furthermore, it is undisputed that in July of 2009,

Abbott discovered that Farrell had violated the Sampling Policy Manual by failing to witness a

physician sign for pharmaceutical samples.  *Id.* at ¶ 27.  Because of these complaints, Farrell

received two written warnings for her conduct, both of which stated that any further violations of

Abbott policy might lead to her termination.  *Id.* at ¶¶ 25, 28-29.  In October of 2009, one of

Defendant's largest customers, FMC, asked Pizzitola, Farrell's supervising manager, to remove

her from thirteen (13) FMC facilities.  These thirteen facilities represented approximately one-

third of the facilities in Farrell's district.  *Id.* at ¶ 31.  After Pizzitola's meeting with FMC

officials, Pizzitola instructed Farrell not to return to any FMC facility managed by Pam Wittkopp

and informed Farrell that Abbott would be investigating her conduct.  *Id.*  Despite Pizzitola's

instructions, Farrell returned to an FMC clinic managed by Wittkopp on October 6, 2009, and allegedly confronted an FMC employee about her removal from the clinic. *Id.*

In order to avoid summary judgment, Plaintiff must adequately rebut Abbott's legitimate non-discriminatory reasons for her termination. Regarding this stage of the analysis, the United States Court of Appeals for the Third Circuit explained as follows:

> [T]o avoid summary judgment, the plaintiff 's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action. . . . To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent . . . . Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," . . . and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."

> *Fuentes*, 32 F.3d at 764-65.

Thus, Farrell may rebut Abbott's legitimate non-discriminatory reasons for her termination in one of two ways. First, Farrell may present evidence that "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication." *Id.* at 761. Alternatively, Farrell may present evidence that "allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id.*

Here, as noted above, Farrell has not provided any direct or indirect evidence that would lead a reasonable factfinder to believe that Abbott's reasons were fabricated or that discrimination was a motivating factor for her termination. First, Farrell contends that all of the allegations against her are false. Doc. No. 53 at ¶ 34. In support of her contention, Farrell has

provided this Court with emails that allegedly rebut the customer complaint in April of 2009 that she was unprofessional during a phone conversation with a customer.  Doc. No. 53.  In addition, Farrell alleges that she was not terminated because of the Sampling Policy Manual violation.  *Id.* Finally, Farrell alleges that FMC's complaints to Pizzitola were unfounded, and that she never intentionally returned to the FMC facility managed by Wittkopp.  *Id.*

Even assuming that Farrell's contentions are accurate, she has not provided this Court with any evidence to allow a reasonable factfinder to find that Abbott's legitimate, non-discriminatory reasons for her termination either were fabricated or did not actually motivate her termination.  As the United States Court of Appeals for the Third Circuit explained, "[t]o discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."  *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997). In other words, "'federal courts are not arbitral boards ruling on the strengths of 'cause' for discharge.  The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination.'"  *Id.* (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996)).  In the present case, Plaintiff's allegations, at most, demonstrate that Abbott made a questionable business decision by terminating a qualified employee.  Her allegations and bold conclusions, accepted as true, however, do not indicate that gender discrimination was Abbott's true motivation for her termination.

Although Farrell may believe that the customer complaints against her were unfounded, and she may believe that she should not have been terminated because of those complaints, her beliefs are insufficient to survive summary judgment.  As the United States District Court for the

16

Eastern District of Pennsylvania has explained, "[i]f an employer relies on statements and complaints . . . when making a decision to terminate an employee, the employee cannot later establish pretext by simply challenging the veracity of such statements. So long as the decision-maker reasonably credited the allegations, an employee's denial is not enough to establish pretext." *McCormick v. Allegheny Valley Sch.,* Civ. A. No. 06-3332, 2008 U.S. Dist. LEXIS 8533 at *43 (E.D. Pa. Feb. 6, 2008) (citing *Coulton v. University of Pennsylvania*, 2006 U.S. Dist. LEXIS 12459, at *26 (E.D. Pa. 2006)). In *McCormick*, the court granted defendant's motion for summary judgment because plaintiff had failed to rebut the employer's legitimate non-discriminatory reason for plaintiff's termination. *Id.* at *45. The employer received multiple complaints about plaintiff's unprofessional conduct in the workplace from other employees. *Id.* After investigating the allegations and giving the employee a written disciplinary warning, the employer terminated the plaintiff's employment. *Id.* Similarly, in *Coulton*, the plaintiff's co-workers filed several complaints about his behavior during working hours, and these complaints eventually led to plaintiff's termination. 2006 U.S. Dist. LEXIS 12459 at *2.

Similar to both the employers in *McCormick* and *Coulton*, Abbott received multiple complaints about Farrell's behavior in the months leading up to her termination. In addition, Abbott had given Farrell two separate disciplinary letters regarding her alleged unprofessional behavior and her inability to abide by the Sampling Policy Manual. Moreover, FMC, Farrell's own client, requested that she not be able to return to FMC facilities. These customer complaints, combined with Farrell's interference into an Abbott investigation gave Abbott more than sufficient grounds to terminate her employment. Furthermore, and critically, Farrell failed

to produce any evidence to support her bald assertions that the allegations against her were false.[15]

In order to survive a motion for summary judgment, a plaintiff must produce more than mere allegations that she was terminated because of her gender.  *See Sola v. Lafayette College*, 804 F.2d 40, 45 (3d Cir. 1986).  Additionally, a plaintiff must provide more than his or her "personal view of his [or her] employer's explanation" in order to establish that an employer's legitimate non-discriminatory reason is pretext.  *Sarullo*, 352 F.3d at 800.  In the present case, Plaintiff's mere assertion that Abbott's reason for her termination is "false," is insufficient to satisfy her burden.  Thus, because Plaintiff failed to provide enough evidence to allow a reasonable factfinder to find that Abbott's legitimate, nondiscriminatory reasons for her termination were pretextual, this Court will grant Defendant's motion for summary judgment.

### B.    COUNT II - VIOLATION OF ERISA

Section 510 of ERISA makes it "unlawful for any personal to discharge . . . discipline, or discriminate against a participant or beneficiary . . . of an employee benefit plan . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."  29 U.S.C. § 1140 (2006).  Thus, under section 510 of ERISA, "a defendant 'can be liable for unlawful interference *before* the participant becomes entitled to benefits under the terms of the plan.'"  *Jakimas v. Hoffman-LaRoche, Inc.*, 485 F.3d 770, 778 (3d Cir. 2007) (quoting *Tolle v. Carroll Touch, Inc.*, 977 F.3d 1129, 1139 (7th Cir. 1992) (emphasis in original)).  When there is no direct evidence to prove a violation of Section 510 of ERISA, this Court must use a *McDonnell Douglas* type of burden shifting analysis to determine whether a plaintiff has proved his or her case.  *DiFederico v. Rolm Co.*, 201 F.3d 200, 205 (3d Cir. 2000).

---

[15] Plaintiff has attached emails between herself and REA employee Lisa Simonton, which do nothing to advance her burden of demonstrating pretext.

In order to set forth a prima facie case, a plaintiff must prove that: "(1) the employer committed prohibited conduct, (2) that was taken for the purpose of interfering, (3) with the attainment of any right to which the employee may be entitled." *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987).

Thus, in order to establish a prima facie case for interference under Section 510 of ERISA, a plaintiff has the burden to prove "the defendant had the specific intent to violate ERISA." *Jakimas*, 485 F.3d at 785 (internal citations omitted).  Although a plaintiff need not prove that an employer's intent to interfere with pension benefits is the only reason for the employee's termination, a plaintiff must show that, "'the employer made a conscious decision to interfere with the employee's attainment of pension eligibility or additional benefits.'" *Id.* (quoting *DiFederico*, 201 F.3d at 205).  Accordingly, "'a prima facie case requires some additional evidence suggesting that pension interference might have been the motivating factor. In this connection . . . the savings to the employer resulting in the [employee's] termination [must be] of sufficient size that they may be realistically viewed as a motivating factor.'" *Jakimas*, 485 F.3d at 785 (quoting *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 348 (3d Cir. 1990)).

In the present case, the only alleged "evidence" Farrell provides to support her allegation of an ERISA violation is the fact that her termination occurred a few weeks before her ten (10) year anniversary with Abbott.  Doc. No. 53 at ¶ 36.  Although Abbott admits that Farrell needed to acquire ten (10) years of service with the company in order to be eligible for early retirement benefits at age 50 or full retirement benefits at age 65 (doc. no. 47 at ¶ 55), in order to avoid summary judgment, Farrell must present evidence beyond a temporal proximity between her termination date and the ten (10) year vesting period of her pension benefits.  As the United

States Court of Appeals for the Third Circuit concluded in *Dewitt v. Penn-Del Directory Corp.*, "'where the only evidence that an employer specifically intended to violate ERISA is the employee's lost opportunity to accrue additional benefits, the employee has *not* put forth evidence sufficient to separate that intent form the myriad of other possible reasons for which an employer might have discharged him.'"  106 F.3d 514, 523 (3d Cir. 1997) (quoting *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 347 (3d Cir. 1990)).

Moreover, and most critically, Farrell did not lose any benefits as a result of her termination.  Despite the fact that she was terminated a few weeks before her ten (10) year anniversary with Abbott, and had accrued only 9.94 years of service with the company, Abbott credited her pension fund with ten years of service, allowing her to collect either early retirement at age 50 or full retirement benefits at the age of 65.  Doc. No. 47 at ¶ 57.

Therefore, because Plaintiff failed to provide this Court with any evidence, other than the temporal proximity, between her termination and the date that her pension benefits vested, and because Abbott credited Farrell with ten (10) years of service, Plaintiff has failed to create a genuine issue of material fact to avoid summary judgment.  Under the existing facts, no reasonable factfinder could determine that Abbott was motivated to terminate Farrell by an intention to avoid paying her pension benefits.  Therefore, this Court will grant Defendant's Motion for Summary Judgment on Count II.

## V.      CONCLUSION

Although Plaintiff appears to have a strongly held subjective belief that her termination was discriminatory, her subjective beliefs and bald accusations (and one email exchange), without more, do nothing to advance her burden to demonstrate that Defendant's legitimate

reasons for her termination were actually pretextual, and that the real reason for her termination was gender discrimination (and interference with ERISA) .

Accordingly, for the reasons previously set forth, this Court will grant Defendant's Motion for Summary Judgment (doc. no. 45) in its entirety.

An appropriate Order follows.


<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge

cc:    All Registered ECF Counsel and Parties

ANGELA FARRELL
5979 Alder Street
Pittsburgh, PA 15232
PRO SE PLAINTIFF